Joy E. DALEY, et al., Appellants,

v.

ALPHA KAPPA ALPHA SORORITY, INC., et al., appellees.

No. 10–CV–220.

District of Columbia Court of Appeals.

Argued Nov. 3, 2010.

Decided Aug. 18, 2011.

Christian R. Erikson, with whom Victor O. Frazer was on the brief, for appellant.

Dale A. Cooter, with whom Donna S. Mangold, Washington, DC, Aaron Handleman, Hanover, MD, and Julia Haller, Washington, DC, were on the brief, for appellees.

Before OBERLY, Associate Judge,* Reid, Associate Judge, Retired,** and Steadman, Senior Judge.

STEADMAN, Senior Judge:

A group of eight members of Alpha Kappa Alpha Sorority, Inc. ("AKA") brought suit against the sorority, its affiliate foundation, and certain officials of the sorority, alleging in the main various irregularities in fiscal management. Prior to the filing of an answer and to any discovery, the trial court dismissed all claims as to all parties with prejudice. On appeal, appellants argue that the trial court improperly concluded that (1) the court did not have jurisdiction over the individual appellees, (2) appellants, with one exception, lacked standing to bring their suit, and (3) appellants failed to state any cognizable claim against the sorority. We agree that the trial court improperly dismissed on these grounds and that the case must be remanded for further proceedings.[1]

## I. Facts and Procedural History

Appellants are members of AKA, which is a private nonprofit corporation (501(c)(7)) organized under the laws of the District of Columbia with its principal place of business in Illinois.[2] Appellants filed suit against AKA, twenty-four individuals who were present or past members of the AKA Directorate, and the AKA Education Advancement Foundation ("Foundation") on July 13, 2009. According to its constitution and by-laws, AKA vests the power to run the sorority in the "Boule," a legislative body that meets biennially. AKA's constitution also establishes the Directorate as the administrative division of the Boule, which is authorized to execute those actions approved by the Boule. Separate from AKA is the Foundation, which is a private nonprofit entity incorporated in Illinois that provides scholarships and other community-oriented programs. The Foundation was created in 1980 by leaders of AKA but is a separate legal entity.

Appellants' First Amended Complaint, filed August 13, 2009, alleges ten counts against AKA, the Foundation, and the individual appellees, including breach of fiduciary duties, breach of contract, fraud, unjust enrichment, corporate waste, and *ultra vires*. These allegations stem from appellants' contention that the appellees violated the rules and procedures set forth in AKA's constitution and by-laws by making several large expenditures without Boule approval, benefitting AKA's President (known as the "Supreme Basileus"), appellee Barbara McKinzie. Among other allegations, appellants assert that while past presidents of AKA were not given

---

* Judge Kramer was assigned to this case at the time of argument. Following Judge Kramer's retirement on May 1, 2011, Judge Oberly was assigned to replace her on the division.

** Judge Reid was an Associate Judge at the time of argument. Her status changed to Associate Judge, Retired on April 7, 2011.

1. As will be indicated *infra,* we do conclude, however, that the dismissal was proper for lack of jurisdiction with respect to the affiliated foundation and that the complaint failed to state a cognizable claim against the appellees based on a theory of corporate waste. In those respects, the dismissal is affirmed.

2. "AKA is a private, voluntary, social organization comprised primarily of African—American women that was established in 1908 to cultivate and encourage high scholastic and ethical standards, improve the social stature of the race, promote unity and friendship among college women, and keep alive within graduates an interest in college life and progressive movement emanating therefrom." *Jolevare v. Alpha Kappa Alpha Sorority, Inc.,* 521 F.Supp.2d 1, 3 (D.D.C.2007) (quotation marks omitted).

salaries, the Directorate made several large payments to McKinzie in 2007 and subsequent years, including a lump sum of $250,000, and a recurring $4,000 a month "pension" stipend.

Appellants assert that these payments were made without Boule approval, and that they were prevented from discussing and voting on these actions at the July 2008 Boule meeting held in the District of Columbia. According to appellants, AKA's constitution and by-laws ensure its members the right to send delegates to the biennial Boule meeting, where those delegates represent the members' interests in debating and voting on the sorority's activities. Despite being a matter of importance to appellants, the expenditures to President McKinzie were not placed on the 2008 Boule meeting agenda. According to appellants, President McKinzie had stated that any unfinished or new business would be discussed at the last plenary session of the Boule; however, she did not open the floor to any unfinished or new matters before closing the Boule meeting. Appellants further allege that judicial intervention is necessary to restore those funds, enjoin the appellees from taking any further action that would harm AKA, and restore their membership privileges, which they claim were denied them in a retaliatory action as a result of filing this suit.

In response to the complaint, appellees filed a motion to dismiss under Super. Ct. Civ. R. 12(b)(1), (2) and (6). Appellants countered with a motion requesting discovery prior to opposing appellees' motion to dismiss. Following a motions hearing, the trial court granted the appellees' motion to dismiss with prejudice and denied appellants' motion as moot.

## II. Jurisdiction

 The trial court ruled that it had jurisdiction over AKA, but dismissed as to the individual appellees and the Foundation for lack of jurisdiction. The trial court's dismissal for lack of personal jurisdiction is reviewed *de novo*, but plaintiffs bear the burden of establishing personal jurisdiction over each defendant. *See Holder v. Haarmann & Reimer Corp.*, 779 A.2d 264, 269 (D.C.2001).

None of the individual appellees is a resident of the District of Columbia and the Foundation is a foreign corporation. Jurisdiction over them depends upon the application of the District's Long Arm Statute and, more particularly, the provision that the District's courts "may exercise personal jurisdiction over a person, who acts directly or by an agent, as to a claim for relief arising from the person's [ ] transacting any business in the District of Columbia." D.C.Code § 13–423(a) (2001). When jurisdiction rests on this provision, "only a claim for relief arising from acts enumerated in this section may be asserted against [the defendant]." D.C.Code § 13–423(b) (2001).

 As we have repeatedly reaffirmed and need not rehearse at length here, the breadth of the "transacting business" provision is coextensive with the due process clause of the Fifth Amendment. "In other words, the defendant must have minimum contacts with the forum so that exercising personal jurisdiction over it would not offend traditional notions of fair play and substantial justice. Hence the defendant must have purposefully directed [its] activities at residents of the forum. This means that the non-resident defendant's conduct and connection with the forum state are such that he should reasonably anticipate being haled into court there." *Gonzalez v. Internacional de Elevadores, S.A.*, 891 A.2d 227, 234 (D.C.2006) (alterations in original) (quotation marks and citations omitted). "[U]nder the due process clause, the minimum contacts

principle requires us to examine the quality and nature of the nonresident defendant's contacts with the District and whether those contacts are voluntary and deliberate or only random, fortuitous, tenuous and accidental." *Shoppers Food Warehouse v. Moreno,* 746 A.2d 320, 329 (D.C.2000) (en banc).

The allegations in the case before us focus in large part on wrongdoing with respect to the 2008 meeting of the Boule, that is, the failure to obtain the alleged requisite Boule approval for the challenged expenditures and the suppression of any discussion of these expenditures at the Boule meetings. The Boule sessions were held in the District of Columbia over the course of a full week. They dealt with the management of a District of Columbia corporation, the entity to which the Boule actions were directed. It appears that all of the named appellees voluntarily participated in the Boule sessions or the actions relating thereto. In these circumstances, the participants could reasonably anticipate being required to defend their actions in the courts of the District without offending traditional notions of fair play and substantial justice. And "[o]nce ... the claim is related to acts in the District, § 13–423 does not require that the scope of the claim be limited to activity within this jurisdiction." *Shoppers Food Warehouse, supra,* 746 A.2d at 326 (internal quotation marks omitted) (quoting *Cohane v. Arpeja–California, Inc.,* 385 A.2d 153,

158–59 (D.C.1978)). The trial court erred in dismissing the action as to the individual appellees for want of jurisdiction.[3]

Jurisdiction over the Foundation, however, is another matter. No acts of wrongdoing in the District are alleged against the Foundation. Rather, the appellants rely on the assertion of general jurisdiction under D.C.Code § 13–334(a), relating to corporations "doing business in the District." The appellants' scanty assertions that the Foundation maintained a website, which was necessarily accessible to District residents, and received applications from and made grants to District residents, were hardly sufficient to establish general jurisdiction and the trial court correctly so ruled. Nor did the trial court abuse its discretion in denying the discovery motion as it related to the Foundation. *See FC Inv. Grp. LC v. IFX Mkts., Ltd.,* 381 U.S.App.D.C. 383, 388–90, 529 F.3d 1087, 1093–94 (2008) ("In order to engage in jurisdictional discovery, the plaintiff must have at least a good faith belief that such discovery will enable it to show that the court has personal jurisdiction over the defendant. Such a request for jurisdictional discovery cannot be based on mere conjecture or speculation." (quotation marks and citation omitted)).

## III. Standing

The trial court found that all appellants other than appellant Daley

---

**3.** The so-called corporate or fiduciary shield doctrine protecting employees who act for a corporation is inapplicable here. In the very case relied upon by appellees, we said that "we explicitly decline to adopt such an absolute 'fiduciary shield' doctrine, which would be difficult to reconcile with Supreme Court precedent and with persuasive case authority from other courts." *Flocco v. State Farm Mut. Auto. Ins. Co.,* 752 A.2d 147, 163 n. 20 (D.C.2000). *See, e.g., Calder v. Jones,* 465 U.S. 783, 790, 104 S.Ct. 1482, 79 L.Ed.2d 804 (1984) (defendants' "status as employees does not somehow insulate them from jurisdiction"). Here, among other things, while the individual appellees as officers and directors were members of the Boule, it appears they were also in part acting in their individual capacities as such members. The trial court properly recognized that the doctrine did not protect the individual appellees in this case and that the jurisdictional question depended on the minimum contacts analysis.

lacked standing to bring this action. Standing is a question of law that is reviewed *de novo;* the underlying factual determinations are reviewed for clear error. *See Board of Dirs. of the Wash. City Orphan Asylum v. Board of Trs. of the Wash. City Orphan Asylum,* 798 A.2d 1068, 1074 (D.C.2002). In order to establish standing, a party must demonstrate: (1) concrete injury, (2) that the injury is traceable to the defendant's action, and (3) that the injury can be redressed. *See Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560–61, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992). Although not an Article III court, "we nonetheless apply in every case the constitutional requirements of a case or controversy and the prudential prerequisites of standing." *Friends of Tilden Park, Inc. v. District of Columbia,* 806 A.2d 1201, 1206 (D.C.2002) (quotation marks and citation omitted).

On its face, it would seem almost self-evident that members of a nonprofit organization whose revenue depends in large part upon the regular recurring annual payment of dues by its members have standing to complain when allegedly the organization and its management do not expend those funds in accordance with the requirements of the constitution and by-laws of that organization. The trial court rejected this argument on the ground that the suit was brought in the members' own names rather than as a derivative suit. *See, e.g., Estate of Raleigh v. Mitchell,* 947 A.2d 464, 469 (D.C.2008). We think this is too expansive a view of the requirement of derivative suits. To begin with, the total equation of a stockholder in a for-profit corporation complaining of financial losses with a member of a nonprofit corporation in an on-going dues-paying basis aimed at social and charitable purposes and the accompanying emotional connotations is an uneasy fit. Furthermore, in the case at bar, the individual rights of the plaintiffs were affected by the alleged failure to follow the dictates of the constitution and by-laws and they thus had a "direct, personal interest" in the cause of action, even if "the corporation's rights are also implicated." *Franchise Tax Board of Cal. v. Alcan Aluminium, Ltd.,* 493 U.S. 331, 336, 110 S.Ct. 661, 107 L.Ed.2d 696 (1990). *See Tooley v. Donaldson, Lufkin & Jenrette, Inc.,* 845 A.2d 1031, 1033 (Del.2004). Moreover, relief from improper discipline, here the suspension of membership, is a direct claim, *see Blodgett v. University Club,* 930 A.2d 210 (D.C.2007),[4] as is the right to faithful representation. *See Wisconsin Ave. Assocs., Inc. v. 2720 Wisconsin Ave. Coop. Ass'n,* 441 A.2d 956, 962–63 (D.C.1982) (holding that the directors and developers of a housing cooperative must act in good faith on behalf of the cooperative's individual members). Appellants make similarly persuasive arguments regarding their breach of fiduciary duties, *ultra vires,* and contract claims. *See Waller v. Waller,* 187 Md. 185, 49 A.2d 449, 453 (1946) ("Unquestionably a stockholder may bring suit in his own name to recover damages from an officer of a corporation for acts which are violations of a duty arising from contract or otherwise and owing directly from the officer to the injured stockholder."); 12B FLETCHER CYC. CORP. § 5915.10 (2010) (*ultra vires* actions may be brought directly); *Willens v. 2720 Wisconsin Ave. Coop. Ass'n,* 844 A.2d 1126,

---

4. The trial court did rule that "only Plaintiffs whose membership privileges have been suspended survive the standing challenge," but stated that only one plaintiff met that requirement. Appellants assert correctly that a fair reading of the complaint indicates that all eight plaintiffs were in some way disciplined. The complaint states that the appellees "wrongly retaliated against all of the Plaintiffs, by suspending Plaintiffs for filing this action."

1135 (D.C.2004) (upholding direct breach of contract claim for violation of association's by-laws).

The trial court also was concerned about whether the alleged injuries could be redressed, correctly citing the general principle that "[c]ourts ordinarily will not interfere with the management and internal affairs of a voluntary association." *Levant v. Whitley*, 755 A.2d 1036, 1043 (D.C.2000) (quotation marks and citation omitted). But in that case, we assumed without deciding that intervention would be appropriate when an organization failed to follow its own rules, proceeded to undertake an exhaustive analysis of compliance *vel non*, and remanded the case. In the case before us, we are dealing with allegations that AKA, a District of Columbia corporation, violated its own constitution and by-laws. It was too early, at the Rule 12(b) stage, to conclude that any judicial relief was precluded.

## IV. Dismissal for Failure to State a Claim under Rule 12(b)(6)

Having dismissed all appellees for lack of jurisdiction other than AKA, the trial court addressed the three claims made against AKA, which were labeled corporate waste, *ultra vires*, and breach of contract claims. It dismissed the complaint against AKA for failure to state a claim under any of these theories. Dismissals under Sup.Ct. Civ. R. 12(b)(6) are reviewed *de novo* and this court must construe all facts and inferences in favor of the plaintiff. *See In re Estate of Curseen*, 890 A.2d 191, 193 (D.C.2006); *Atkins v. Industrial Telecomms. Ass'n*, 660 A.2d 885, 887 (D.C.1995).

Corporate waste claims must articulate an "exchange of corporate assets for consideration so disproportionately small as to lie beyond the range at which a reasonable person might be willing to trade," and must be "egregious or irrational." *Alberts v. Tuft* (*In re Greater Southeast Comty. Hosp. Corp., I* ), 333 B.R. 506, 524 (Bankr.D.D.C.2005) (quotation marks and citations omitted). The essence of a waste claim is "the diversion of corporate assets for improper and unnecessary purposes," and to meet that standard, the conduct must be "exceptionally one-sided." 3A Fletcher Cyc. Corp. § 1102 at 150–51 (2010). Courts are very deferential to the business judgment of officers and directors of a corporation in decision-making, and a claim of waste, even where authorized, will be upheld only where a shareholder can "show that the board 'irrationally squander[ed]' corporate assets." *White v. Panic*, 783 A.2d 543, 554 (Del.2001) (internal citation omitted). If any reasonable person would find that the corporation's decision made sense, the judicial inquiry ends. *See In re Lear Corp. S'holder Litig.*, 967 A.2d 640, 656 (Del.Ch.2008). While the appellants make serious allegations about expenditures of the sorority's funds, it is difficult to see how the expenditures could be deemed corporate waste under the demanding standard set forth above. The heart of appellants' case focuses on the absence of Boule approval, and the doctrine of corporate waste does not help them there. We conclude the trial court properly dismissed that count.

The trial court dismissed the *ultra vires* claim because appellants could not show that AKA took actions expressly prohibited by "statute or law," citing *Columbia Hosp. for Women Found., Inc. v. Bank of Tokyo–Mitsubishi Ltd.*, 15 F.Supp.2d 1 (D.D.C.1997), *aff'd*, 333 U.S.App.D.C. 46, 159 F.3d 636 (1998). In fact, however, the case states that an *ultra vires* claim can be brought where the corporate action is "expressly prohibited by statute or *by-law*," 15 F.Supp.2d at 7 (emphasis added), and the latter was alleged here. *See also*

D.C.Code § 29–301.06 (2001); *Cross v. Midtown Club, Inc.,* 33 Conn.Supp. 150, 365 A.2d 1227, 1229 (1976) (affirming plaintiff's claims "that the corporation and its directors, in establishing those policies, have acted *ultra vires* in that they have exceeded the powers conferred upon them by the certificate of incorporation, the bylaws, and the state statutes regulating corporate powers, and that, in so doing, they have breached the plaintiff's rights as a member of the corporation"); 7A FLETCHER CYC. CORP. § 3399 (2006). The *ultra vires* count should not have been dismissed.

■ Finally, with respect to the breach of contract count, the trial court acknowledged that "[i]t is well established that the formal bylaws of an organization are to be construed as a contractual agreement between the organization and its members since the continuing relationship between the organization and its members manifests an implicit agreement by all parties concerned to abide by the bylaws." *Meshel v. Ohev Sholom Talmud Torah,* 869 A.2d 343, 361 (D.C.2005) (internal citations omitted). Believing, however, that only one plaintiff had standing and that only with respect to her suspension, the trial court dismissed the count for failure to show that the suspension violated any of AKA's governing documents. Even if that was so, which appellants contest, the limited standing assumption was erroneous and the complaint does allege various violations of the constitution and by-laws. The breach of contract count should not have been dismissed.

In the last analysis, the appellants here have clearly spelled out both the alleged wrongdoings committed with regard to an organization of which they are members and the requested relief. *See* Super. Ct. Civ. R. 8(a)(2), (3). Dismissal with prejudice at the very outset of the litigation came too soon and blocked any consideration on the merits of any of the claims. Accordingly, we affirm the dismissal with respect to the Foundation and with respect to the claim for corporate waste. In all other respects, the dismissal is reversed and the case remanded for further proceedings.

*Affirmed in part, reversed in part, and remanded.*