# District of Columbia
# Court of Appeals

**No. 15-FM-429**

JAMES DAVID SPELLMAN,

                Appellant,

    v.

JOSEPH BOLAND, PERSONAL REPRESENTATIVE OF
    THE ESTATE OF MICHAEL JOSEPH KELLY,
                Appellee.



**DRB-2765-13**

On Appeal from the Superior Court
of the District of Columbia

BEFORE: BLACKBURNE-RIGSBY, EASTERLY, and MCLEESE; *Associate Judges*.

## J U D G M E N T

        This case came to be heard on the transcript of record and the briefs filed, and was argued by counsel. On consideration whereof, and for the reasons set forth in the opinion filed this date, it is now hereby

        ORDERED and ADJUDGED that the judgment of the Superior Court is reversed, and the case is remanded for further proceedings.

             For the Court:

             JULIO A. CASTILLO
             Clerk of the Court

Dated: July 7, 2016.

Opinion by Associate Judge Roy W. McLeese.

*Notice: This opinion is subject to formal revision before publication in the Atlantic and Maryland Reporters. Users are requested to notify the Clerk of the Court of any formal errors so that corrections may be made before the bound volumes go to press.*

# DISTRICT OF COLUMBIA COURT OF APPEALS

No. 15-FM-429

FILED 7/7/16
District of Columbia
Court of Appeals

Julio Castillo
Clerk of Court

JAMES DAVID SPELLMAN, APPELLANT,

v.

JOSEPH BOLAND, PERSONAL REPRESENTATIVE OF THE ESTATE OF MICHAEL JOSEPH KELLY, APPELLEE.

On Appeal from the Superior Court
of the District of Columbia
(DRB-2765-13)

(Hon. Judith A. Smith, Trial Judge)

(Argued May 5, 2016                                                  Decided July 7, 2016)

*Ugo Colella* for appellant.

*Darryl A. Feldman*, with whom *Rebecca C. Shankman* was on the brief, for appellee.

Before BLACKBURNE-RIGSBY, EASTERLY, and MCLEESE, *Associate Judges*.

MCLEESE, *Associate Judge*:  Appellant James David Spellman filed a petition in Superior Court seeking a declaration affirming the existence of a common-law marriage between Mr. Spellman and his late partner, Michael Joseph

Kelly. Mr. Spellman appeals from the trial court's order dismissing the petition for lack of personal jurisdiction over appellee Joseph Boland, in his capacity as personal representative of Mr. Kelly's estate. We conclude that the Superior Court has personal jurisdiction over Mr. Boland. We therefore reverse and remand for further proceedings.

## I.

Although there are factual disputes between the parties as to Mr. Kelly's connections to the District of Columbia, the trial court found the following facts that appear to be undisputed in this court. In the fall of 1993, Mr. Spellman and Mr. Kelly, who both lived in the District, met and began dating. In 1998, the two decided to live together and to hold themselves out as partners. Although Mr. Spellman and Mr. Kelly primarily resided at Mr. Spellman's residence in the District, Mr. Kelly also owned a home in Delaware, where he and Mr. Spellman stayed on the weekends and during the summer. Mr. Kelly worked in the District until 2006, when he retired and began spending more of his time at his Delaware home. After 2006, Mr. Kelly did some consulting work in the District for several years, and he continued to travel to the District and to spend time there with Mr. Spellman. Throughout the period from 1998 to 2013, Mr. Kelly and Mr. Spellman

co-hosted social events in the District, sent joint holiday cards from Mr. Spellman's address in the District, and attended book clubs, the opera, and the theater together in the District. Mr. Kelly was diagnosed with cancer in December 2012 and passed away two months later.

Mr. Boland, Mr. Kelly's brother-in-law, filed a petition in Delaware to probate Mr. Kelly's estate. Mr. Boland was appointed personal representative of the estate. Once the probate matter was opened, Mr. Spellman filed a claim for a spousal allowance. Mr. Boland rejected Mr. Spellman's claim on the ground that there was no documentation of a marriage between Mr. Spellman and Mr. Kelly that would be recognized under Delaware law. Mr. Spellman filed a petition in the District seeking a declaration that he and Mr. Kelly had entered into a common-law marriage. Mr. Boland filed a motion to dismiss for lack of personal jurisdiction. In opposition, Mr. Spellman argued that the trial court had personal jurisdiction under a number of provisions, including D.C. Code § 13-423 (a)(7)(E) (2012 Repl.), which gives the Superior Court personal jurisdiction with respect to claims for relief arising from a person's "marital . . . relationship in the District of Columbia," as long as "there is any basis consistent with the United States Constitution for the exercise of personal jurisdiction." The trial court held an evidentiary hearing on the motion. At the hearing, somewhat conflicting evidence

was presented about Mr. Kelly's ties to the District and to Delaware. The trial court granted Mr. Boland's motion to dismiss, rejecting several of Mr. Spellman's jurisdictional arguments but without addressing whether the trial court had personal jurisdiction under section 13-423 (a)(7)(E).

## II.

Mr. Spellman argues that the trial court erred in concluding that it lacked personal jurisdiction. We review de novo whether, on the undisputed facts, the trial court had personal jurisdiction. *See generally, e.g.*, *Holder v. Haarmann & Reimer Corp.*, 779 A.2d 264, 269 (D.C. 2001). We conclude that the trial court did have personal jurisdiction.

Although Mr. Boland is named as the defendant in his capacity as personal representative of Mr. Kelly's estate, the parties correctly agree that the relevant inquiry is whether the Superior Court could properly have exercised personal jurisdiction over Mr. Kelly himself. *See* D.C. Code § 13-421 (2012 Repl.) (for purposes of determining personal jurisdiction, "person" includes "an individual, his executor, administrator, or other personal representative"); *see also, e.g.*, *Willis v. Willis*, 211 U.S. App. D.C. 103, 105, 655 F.2d 1333, 1335 (1981) (executor "was

subject to the court's jurisdiction to the same extent that [decedent] would have been") (citing D.C. Code § 13-421 (1973)).

Mr. Spellman claims that a marital relationship arose in the District between Mr. Spellman and Mr. Kelly. Mr. Spellman argues, and Mr. Boland does not dispute, that under section 13-423 (a)(7)(E) the Superior Court would have had personal jurisdiction over Mr. Kelly to determine that claim as long as the exercise of such jurisdiction would be consistent with the Due Process Clause of the United States Constitution. Mr. Boland argues only that the exercise of personal jurisdiction over Mr. Kelly would be inconsistent with the Constitution. We conclude to the contrary and therefore rule as a matter of law that the Superior Court has personal jurisdiction in this case.

In determining whether an exercise of personal jurisdiction over Mr. Kelly would be permissible under the Due Process Clause, we consider whether Mr. Kelly had sufficient "minimum contacts" with the District, so that exercising personal jurisdiction over Mr. Kelly "would not offend traditional notions of fair play and substantial justice." *Daley v. Alpha Kappa Alpha Sorority, Inc.*, 26 A.3d 723, 727 (D.C. 2011) (internal quotation marks omitted). "[T]he critical issue is whether the individual's conduct and connection with the forum state are such that

he should reasonably anticipate being haled into court there." *Family Fed'n for World Peace v. Hyun Jin Moon*, 129 A.3d 234, 242 (D.C. 2015) (internal quotation marks omitted); *see also, e.g.*, *Shoppers Food Warehouse v. Moreno*, 746 A.2d 320, 329 (D.C. 2000) (en banc) (jurisdictional inquiry focuses on "the relationship among the defendant, the forum[,] and the litigation") (internal quotation marks omitted).

The undisputed facts show that Mr. Kelly maintained substantial contacts with the District. Mr. Kelly owned a home in the District until 1998, when he moved in with Mr. Spellman at Mr. Spellman's home in the District. From 1998 to 2006, Mr. Spellman and Mr. Kelly shared a residence in the District and held themselves out as partners. Mr. Kelly lived and worked in the District until 2006, when he retired. Although Mr. Kelly began spending more of his time in Delaware after his retirement, Mr. Kelly's contacts with the District continued up to his death in 2013. During the period from 2006 to 2012, Mr. Kelly and Mr. Spellman continued to co-host social events in the District, send joint holiday cards from Mr. Spellman's address in the District, and attend events together in the District.

We conclude that, given Mr. Kelly's extensive contacts with the District, he would have "reasonably anticipate[d] being haled into court" in the District,

*Family Fed'n for World Peace*, 129 A.3d at 242, with respect to a claim that those same contacts gave rise to a common-law marriage in the District. *Cf., e.g.*, *In re Estate of Rodriguez*, 160 P.3d 679, 684 (Ariz. Ct. App. 2007) (trial court had personal jurisdiction over non-resident husband where parties married in state and validity of marriage was central issue); *In re Marriage of Adams*, 21 P.3d 171, 173-76 (Or. Ct. App. 2001) (in divorce and custody action, trial court had personal jurisdiction over non-resident husband who had "prolonged, continuous[,] and frequent contacts with Oregon"); *Jessie v. Jessie*, 920 S.W.2d 874, 876 (Ark. Ct. App. 1996) (affirming personal jurisdiction over non-resident husband in divorce action where parties married in state; husband owned property in state, had checking account in state, and registered car in state; and husband regularly stayed with wife in state).

We also conclude that the exercise of personal jurisdiction in this case would not offend "traditional notions of fair play and substantial justice." *Daley*, 26 A.3d at 727 (internal quotation marks omitted). "In large part, the concept of fair play and substantial justice is informed by the connection between the forum and the underlying dispute -- in other words, the forum State's interest in adjudicating the dispute." *Ahmad Hamad Al Gosaibi & Bros. Co. v. Standard Chartered Bank*, 98 A.3d 998, 1005 (D.C. 2014) (internal quotation marks omitted). Here, there is a

clear connection between the contacts giving rise to jurisdiction in the District -- many of which concern Mr. Kelly's relationship with Mr. Spellman -- and the question whether Mr. Spellman and Mr. Kelly entered into a common-law marriage in the District. *Cf. In re Marriage of Adams*, 21 P.3d at 178 (where non-resident husband had extensive contacts with Oregon, exercise of personal jurisdiction over non-resident husband in divorce and custody action "comported with recognized notions of fair play and substantial justice"). Indeed, it seems both fair and just that the question whether a marriage arose in and under the laws of the District, based on the parties' course of conduct while living together in the District, should be adjudicated in the District. *Cf. generally, e.g.*, *Bansda v. Wheeler*, 995 A.2d 189, 198 (D.C. 2010) ("The validity of a marriage is to be determined by the law of the jurisdiction where the marriage occurred.").

Mr. Boland argues, however, that exercising personal jurisdiction over him with respect to this action would be inconsistent with the Constitution. Specifically, Mr. Boland contends that Mr. Kelly could not reasonably have anticipated being haled into court in the District over a claim that Mr. Kelly's contacts with the District gave rise to a common-law marriage, because same-sex marriage was not statutorily recognized in the District until 2010, by which time Mr. Kelly lived and was domiciled in Delaware. *See* D.C. Code § 46-401 (2012

Repl.). Even assuming that Mr. Kelly was domiciled in Delaware in 2010, the District nevertheless can constitutionally exercise personal jurisdiction over Mr. Kelly in this case. Mr. Spellman claims that, as a result of Mr. Kelly's substantial and extended conduct in the District, a common-law marriage arose in the District. Mr. Spellman further claims that that common-law marriage should now be recognized as having existed since 1998. The merits of that claim are distinct from the conclusion we reach today: that the Constitution would permit the Superior Court to exercise personal jurisdiction over Mr. Kelly because Mr. Kelly had minimum contacts with the District that sufficiently relate to the underlying dispute.

Accordingly, we conclude that the Superior Court had personal jurisdiction over Mr. Boland under D.C. Code § 13-423 (a)(7)(E). We therefore do not reach Mr. Spellman's alternate asserted bases for personal jurisdiction. *See* D.C. Code §§ 13-422 (personal jurisdiction exists when defendant is domiciled in the District), -423 (a)(1), (2), (5), (7)(A)-(C) (2012 Repl.).

## III.

For the foregoing reasons, the judgment of the Superior Court is reversed and the case is remanded for further proceedings.

*So ordered.*