In re SOUTHEAST NEIGHBORHOOD
HOUSE, Debtor.

Anthony MOTLEY, Plaintiff,

v.

SOUTHEAST NEIGHBORHOOD
HOUSE, Defendant.

Bankruptcy No. 85–00432.
Adv. No. 87–0019.

United States Bankruptcy Court,
District of Columbia.

Sept. 19, 1988.

Bernard E. Gray, for plaintiff.

Gloria Liddell, Rockville, Md., for defendant.

## MEMORANDUM DECISION

S. MARTIN TEEL, JR., Bankruptcy
Judge.

The plaintiff Anthony Motley ("Motley")
alleges that he was wrongfully discharged
by the defendant Southeast Neighborhood
House ("Southeast"). The matter having
been tried and post-trial briefs filed, the

Court makes the following findings of fact and conclusions of law.

## FINDINGS OF FACT

The defendant is a non-profit community organization serving the southeast section of Washington, D.C. It filed a Chapter 11 bankruptcy petition on July 15, 1985. Motley filed this adversary proceeding on March 19, 1987. The Court determines that this matter is a core proceeding under 28 U.S.C. Section 157 because it relates to a claim against the estate arising during the administration of the case.

Motley was hired as executive director of Southeast in November 1984 pursuant to an oral contract which was reduced to writing on July 15, 1985.[1] The contract delineated Motley's major responsibilities, determined his annual salary, and contained a termination clause which stated that Motley could be discharged by Southeast for cause provided Southeast gave him a 30–day written notice stating the reason for termination. The contract was modified in October 1986 to increase his annual salary from $30,000 to $35,000, creating a new post-petition contract.[2]

Some members of the Southeast Board of Directors ("Board") became disenchanted with Motley; this culminated in allegations of insubordination vis-a-vis the Board. Relations between Motley and Magnus Blanchette, President of the Board, became particularly strained. This tension precipitated the call for a special Board meeting on January 26, 1987, to consider the discharge of Motley. The meeting was cancelled due to inclement weather and was rescheduled for January 30, 1987. The by-laws of Southeast require three-day notice to Board members for special meetings when the notice is not in writing.[3] Blanchette and other Board members attempted to provide telephonic notice to all Board members concerning the January 30 special meeting.

A firmly established principle of corporation law is that all Board members are entitled to proper notice of special board meetings. Eleven of the 16 Board members attended the January 30 meeting, which Motley also attended. Attendance at a special meeting constitutes a waiver of notice under D.C. CODE Section 29–523(c). However, the uncontradicted trial testimony of Board member Dr. Frank Morris, who was opposed to Motley's discharge, establishes that he received telephonic notice of the January 30 meeting during the morning of January 28, 1987. The meeting took place less than 72 hours later. Thus, Dr. Morris was not given three days advance notice.[4] Dr. Morris did not waive notice, either by attendance at the January 30 meeting or otherwise.

At the January 30, 1987 meeting, by a 5–4 vote (with two abstentions), the Board voted to discharge Motley based on allegations of insubordination. Motley alleges that he was discharged primarily because of his political activities, specifically his support of a Republican mayoral candidate. However, the Court finds that Motley was discharged as a result of significant personality differences with some members of the Board, particularly Board President Magnus Blanchette. The personality tension led Motley to make remarks to certain Board members that could in good faith be regarded as insubordinate or at the very least inimical to the interests of Southeast.[5]

---

1. The retention of Motley as a salaried professional did not require court approval under 11 U.S.C. Section 327(a) by virtue of 11 U.S.C. Section 327(b).

2. Once Southeast entered into the $35,000 post-petition employment contract, the validity of which was never attacked, the debtor was bound by its burdens. *In re Airlift Intern., Inc.,* 761 F.2d 1503, 1512 (11th Cir.1985).

3. *See* D.C.CODE ANN. Section 29–523 (1981).

4. By way of analogy, Rule 6(a) of the District of Columbia Rules of Civil Procedure provides that the day of the event in question shall not be included in the computation of a period of time allowed by an applicable statute.

5. For instance, Motley suggested to a Board member at the January 30, 1987, Board meeting that he would physically confront him outside the meeting room. A campaign flyer of Carol Schwatz, the Republican mayoral candidate, had listed Motley as a supporter and indicated he was "Executive Director, Southeast Community Organization" in obvious reference to his

Although certain members of the Board were concerned that Motley's association with the campaign of a Republican candidate might adversely affect Southeast's fund raising efforts and relationships with agencies of the city's Democratic administration, the Board members consciously avoided taking any action against Motley based on this factor because of their concern that his right to association should be protected. The evidence does not support plaintiff's claim that he was discharged because of his political activities.

Motley received 30–days written notice of his termination on February 5, 1987. The notice did not contain the reason for his discharge as required by his employment contract. He was provided a list of tasks to be completed during the 30–day notice period.[6] He was directed to complete the assigned tasks at an office shared by another employee in Southeast's day care center rather than at his usual office, but this did not violate his employment contract. The termination was to take effect on March 1, 1987. However, Motley left his position as Executive Director on February 4, 1987. He remained unemployed until July 1987 when he accepted substitute employment at a higher salary. The evidence did not fix a precise date of Motley's new employment. Hence, the Court assumes that it was on or about July 1, 1987.

Southeast ratified its January 30, 1987, discharge decision at a duly-convened Board meeting in April, 1988. By that time, however, several of the former Board members had resigned in protest over Motley's discharge.

## CONCLUSIONS OF LAW

### I. *Liability*

█ The January 30, 1987, Board meeting was improperly convened because notice to Board member Morris did not comport with the three-day notice requirement of Southeast's by-laws. Improper notice to only one board member is sufficient to render the meeting invalid inasmuch as valid notice to a quorum, as here, is insufficient to cure the notice defect. *See* 2 FLETCHER CYCLOPEDIA OF CORPORATIONS Section 406 (perm. ed 1982). Any decision of the Board at a special meeting not properly noticed is invalid and is not binding on the corporation.

█ The invalid January 30, 1987, Board decision was subsequently ratified in April, 1988, at a properly convened Board meeting. Normally, ratification of an invalid Board decision has retroactive effect, making the ratified action valid as of the original decision date. 2A FLETCHER CYCLOPEDIA OF CORPORATIONS Section 782 (perm. ed. 1982). However, an exception to this rule applies where a third person has acquired rights subsequent to the invalid corporate decision but prior to ratification, as a result of which retrospective operation of ratification would constitute overreaching. *Id.* By applying this principle some courts have denied retroactive effect to the ratification of the wrongful discharge of a corporate officer, who, as a result of the wrongful discharge, has acquired the right to sue for damages.[7] For

position at Southeast. When asked by a Board member at an Executive Committee meeting on January 17, 1987, about his association with a mayoral candidate *in his official capacity* and how it might impact Southeast's fund raising efforts, Motley said that he did not need to check in with the Board to go to the bathroom. Board member Gregory Simpkins testified that Motley said to Simpkins at some point prior to the January 30, 1987 meeting: "I thought I was talking to someone who had intelligence." Motley disputes that the friction engendered by Motley's comments and the personality conflicts with certain Board members would in fact constitute cause for dismissal under paragraph 17 of Motley's contract. *See Vogel v. Washington*

*Metro. Transit Auth.*, 533 F.2d 13 (D.C.Cir.1976). The Court need not decide this issue because the discharge was invalid, whether as a discharge for cause or without cause, due to invalid notice and because the Court's award on other grounds exceeds 120–days severance pay.

6. For example, Motley was instructed to prepare instructions for compiling reports pertinent to Southeast's activities, develop a donation letter to corporations for office equipment, and target potential donor corporations.

7. *See McCreery v. RSA Management, Inc.*, 249 Ga. 43, 287 S.E.2d 203 (1982); *Essential Enterprises Corp. v. Automatic Steel Prods.*, 39

instance, the Court in *Essential Enterprises Corp. v. Automatic Steel Prods.*, 39 Del.Ch. 371, 164 A.2d 437, 438 (Del.Ch. 1960), declined to permit retroactive effect to ratification, stating that "[an] invalidly removed director may be entitled to compensation on the basis of the equities."

 A corporation should not be encouraged to disregard the procedural requirements of its by-laws at the expense of jobs held by corporate officers, particularly when the question of whether cause exists for a discharge is a closely contested issue. Thus, a special meeting called to consider the discharge of a corporate officer should comply with the notice requirements of the corporate by-laws. Otherwise, the corporation may not receive the benefit of full consideration and deliberation of its board of directors, and a corporate officer may not be accorded the benefit of full deliberation regarding his dismissal. Therefore, this Court holds that ratification of a corporate officer's wrongful discharge is generally not retroactive to the date of the wrongful discharge. There are no special circumstances in this case that would warrant a departure from the general rule. The equities weigh in favor of Motley: the outcome of a Board vote was by no means a foregone conclusion and Motley, who sued immediately in March 1987, did not deliberately lie back silently to secure a windfall from the Board's procedural blunder.

## II. *Damages*

Motley was wrongfully discharged as a result of the improperly convened Board

meeting. His cause of action is not barred as a result of the subsequent ratification of his discharge. Therefore, he is entitled to damages.

 The normal measure of damages for wrongful discharge is the amount of wages the employee would have received during the unexpired period of employment, subject to mitigation. *District of Columbia v. Jones*, 442 A.2d 512, 524 (D.C. 1982). Motley's employment contract was to expire on September 30, 1987. However, he took another position in July 1987 thereby mitigating the amount of damages to which he was originally entitled. Moreover, Motley should have further mitigated his damages by remaining in his position at Southeast until March 1, 1987, the expiration date of the 30–day termination notice period. Southeast was obliged to pay Motley's salary during the 30–day period. Motley would not have suffered any harm during the notice period had he remained on the job to March 1, 1987, even though he had been wrongfully discharged. Moreover, the tasks assigned to Motley during the 30–day period [8] were not inconsistent with executive director responsibilities.[9]

 Therefore, the Court concludes that Motley is entitled to damages for the four-month period between February 1987 and July 1987. At the time of his discharge Motley's yearly salary was $35,000. Thus, his gross monthly earnings were approximately $2,917. Therefore, he is entitled to $11,668 for lost wages resulting from his wrongful discharge.[10]

Del.Ch. 371, 164 A.2d 437 (1960); *Gentry–Futch Co. v. Gentry*, 90 Fla. 595, 106 So. 473 (1925); *see generally* Annotation, *Right of Corporate Officer to Recover Compensation for Time Period Between Original Improper Discharge and Subsequent Legal Discharge*, 82 A.L.R.2d 965 (1962).

**8.** *See supra* note 6.

**9.** Motley was instructed to report during the 30–day notice period to Southeast's day care center where he would share office space with a day care center worker. The Court can only speculate whether the day care center constituted the ideal atmosphere for completing the kinds of tasks assigned to Motley. Regardless,

the Southeast Board was not barred from ordering him to work at the day care center. Given the equitable considerations that affect liability in the circumstances of an invalidated Board vote, Motley ought not be compensated merely because the new work site may have been demeaning to his status.

**10.** It is noted that Motley received unemployment benefits prior to receiving another job in July 1987. However, receipt of unemployment benefits by a wrongfully discharged employee prior to gaining employment elsewhere does not reduce the recoverable amount of wages. *Washington Welfare Ass'n., Inc. v. Poindexter*, 479 A.2d 313, 317–18 (D.C.1984).

■ Further, the Court holds that Motley's request for attorneys fees as part of his damages should be denied. Had Motley's discharge been premised on political beliefs or activities as he alleged, it would have been violative of the D.C. Human Rights Act,[11] and attorneys fees would have been properly allowable.[12] However, the discharge was not premised on Motley's political beliefs or activities.[13]

■ Motley also seeks reinstatement. However, reinstatement is precluded by the valid April 1988 ratification of his discharge. The valid ratification also precludes declaring the termination decision void as sought by Motley.

## CONCLUSION

Based on the foregoing, a judgment shall be entered decreeing that Motley recover of defendant $11,668, plus costs, and that all further relief sought is denied.

11. D.C.CODE ANN. Section 1–2512 (1981).

12. D.C. CODE ANN. Section 1–2553(a)(1)(E) (1981). The Court notes that the award of attorneys fees under Section 1–2553(a)(1)(E) is not compulsory under D.C. CODE ANN. 1–2556(b) (1981), which governs such an award in a private cause of action under the Human Rights Act. D.C. CODE Section 1–2553 pertains to an action before the D.C. Commission on Human

Rights. *See Thompson v. International Ass'n of Machinists & Aerospace Workers,* 664 F.Supp. 578, 579 (D.C.1987).

13. Because the wrongful discharge was not violative of the Human Rights Act, it is unnecessary to decide whether Motley's motion to amend his complaint to state a claim under that Act was untimely.