# District of Columbia
# Court of Appeals

**No. 15-CV-773**



FILED
SEP 22 2016
DISTRICT OF COLUMBIA
COURT OF APPEALS

CLARENCE JACKSON, *et al.*,

Appellants,

v.

**CAB-7115-13**

ROBERT GEORGE, *et al.*,

Appellees.

On Appeal from the Superior Court of the District of Columbia
Civil Division

BEFORE: FISHER and THOMPSON, *Associate Judges*; and FARRELL, *Senior Judge*.

## JUDGMENT

This case came to be heard on the transcript of record and the briefs filed, and was argued by counsel. On consideration whereof, and as set forth in the opinion filed this date, it is now hereby

ORDERED and ADJUDGED that the judgment on of the trial court is affirmed.

For the Court:

*Julio A. Castillo*

JULIO A. CASTILLO
Clerk of the Court

Dated: September 22, 2016.

Opinion by Associate Judge Phyllis D. Thompson.

*Notice: This opinion is subject to formal revision before publication in the Atlantic and Maryland Reporters. Users are requested to notify the Clerk of the Court of any formal errors so that corrections may be made before the bound volumes go to press.*

## DISTRICT OF COLUMBIA COURT OF APPEALS

No. 15-CV-773

FILED 9/22/16
District of Columbia
Court of Appeals

Julio Castillo
Clerk of Court

CLARENCE JACKSON, *et al*., APPELLANTS,

V.

ROBERT GEORGE, *et al*., APPELLEES.

Appeal from the Superior Court
of the District of Columbia
(CAB-7115-13)

(Hon. Stuart Nash, Trial Judge)

(Argued May 3, 2016                    Decided September 22, 2016)

*Anthony P. Ashton*, with whom *Dennis Whitley, III*, and *Isaac H. Marks, Sr.*, were on the brief, for appellant.

*Joseph M. Creed*, of the state of Maryland, *pro hac vice*, by special leave of court, with whom *Timothy F. Maloney*, *Ronald M. Cherry*, *D'Ana E. Johnson*, and *Nadia A. Patel*, were on the brief, for appellees.

Before FISHER and THOMPSON, *Associate Judges*, and FARRELL, *Senior Judge*.

THOMPSON, *Associate Judge*: This matter arose when plaintiffs/appellees, individuals who had been longtime congregants of Jericho Baptist Church Ministries, Inc. (also known as Jericho City of Praise) during its existence as a District of Columbia non-profit corporation ("Jericho D.C."), sued a number of

individuals (the "individual appellants") who (1) incorporated under Maryland law a church bearing the same name ("Jericho Maryland"); (2) claiming to be members of the Jericho D.C. Board of Trustees, merged Jericho D.C. into Jericho Maryland and transferred Jericho D.C.'s assets to the new entity; and (3) thereafter dismissed appellees from membership. The lawsuit also named Jericho Maryland as a defendant. The trial court (the Honorable Stuart Nash) dismissed some of plaintiffs' claims in ruling on motions to dismiss and a motion for summary judgment. The remaining claims proceeded to trial, after which Judge Nash ruled that the putative Jericho D.C. trustees who had merged Jericho D.C. into Jericho Maryland had acted without authority. He granted plaintiffs'/appellees' prayer for declaratory and injunctive relief, *inter alia*, declaring that the individual appellants' purported approval of the merger of Jericho D.C. into Jericho Maryland was invalid and ordering defendants to "refrain from exercising ownership or control over any corporate assets of Jericho Maryland formerly belonging to, or derived from, the corporate assets of Jericho DC."

In this appeal, defendants/appellants renew the jurisdictional, standing, First Amendment, and mootness arguments they made in their pre-trial dispositive motions and contend that Judge Nash erred in declining to dismiss the case before trial. They also argue that the evidence at trial did not support judgment in favor of

appellees, that Judge Nash improperly asserted himself into ecclesiastical matters, that the declaratory judgment he issued is an invalid advisory opinion, and that he improperly relied on evidence submitted after trial. For the reasons discussed, we affirm.

## I. Factual and Procedural Background

The pertinent factual background is set out in Judge Nash's Findings of Fact and Conclusions of Law, which in brief summary are as follows: Jericho D.C. was incorporated in the District of Columbia in 1962 and, from its inception, was "operated and controlled by a Board of Trustees" (the "Board" or the "Jericho D.C. Board"). In 1996, the Board elected to make Jericho D.C. subject to the then-newly enacted District of Columbia Non-Profit Corporation Act ("NPCA"). *See* D.C. Code § 29-301.01 (2001). At the time of that election, Jericho D.C.'s Trustees were Betty Peebles, James Peebles, Jr., William Meadows, Lucy Lane, Anne Wesley, and Dorothy Williams. James Peebles, Jr., and Lucy Lane died some time prior to March 2009, but the other trustees continued to serve on the Board until at least March 2009. One of the disputes at trial was whether Joel R. Peebles (a son of the founder of Jericho D.C.) had been validly installed on the Board at some point prior to March 15, 2009.

The March 15, 2009, date is relevant because, on that date, a document entitled "Resolution 1-09 of Board of Trustees" (hereinafter "the Resolution" or "Resolution 1-09") was signed by Board members Betty Peebles, William Meadows, Anne Wesley, and Dorothy Williams. The Resolution purported to install a new Board comprised of longtime members Betty Peebles and Dorothy Williams and seven new members, including appellants Clarence Jackson, Gloria McClam-Magruder, and Denise Killen. "By implication," Judge Nash found, Resolution 1-09 relieved Meadows and Wesley "as well as Joel R. Peebles, if he was, in fact, a member of the Board prior to March 2009[,]" of their duties as Trustees. Judge Nash found that Meadows signed the resolution at the direction of Betty Peebles (who was then the "leader of Jericho DC"), "believing it to be a routine piece of business related to the administration of the church[,]" and that Meadows "had no understanding that by signing the document he had effectively resigned as a trustee and elected a new slate of members of the Board." Judge Nash further found that Joel Peebles "received no notice of Resolution 1-09 prior to its passage[,]" not learning of it until September 2010.

After March 2010, Betty Peebles was in declining health. She died on October 12, 2010. On November 1, 2010, Jackson, McClam-Magruder, Killen,

Williams, and two other individuals incorporated Jericho Maryland. The same day, Articles of Merger were filed in the District of Columbia indicating that, pursuant to a vote of Jericho D.C.'s Board taken on October 30, 2010, Jericho D.C. was merged into Jericho Maryland. On April 18, 2012, appellees Robert George, Anaya Jamison, and Paulette Shelton received letters from McClam-Magruder, "in her capacity as President of the Board of Trustees of Jericho Maryland, terminating their memberships in the church."

On October 15, 2013, appellees George, Jamison, Shelton, and one other individual (Patricia Gray, who was subsequently dismissed from the suit) filed a ten-count complaint against Jackson, McClam-Magruder, Killen, Williams, Clifford Boswell, and Jericho Maryland. The Complaint alleged that the individual appellants "unlawfully seized control of the Church" and "its considerable assets," "purported to dissolve" Jericho D.C., terminated Joel Peebles (who had served as Pastor since the death of Betty Peebles, his mother), and terminated appellees as members and forcibly prevented them from accessing Church services and property. Appellees sought a declaratory judgment that the individual appellants "are not the valid Board of Trustees of the Church," that they are "without lawful authority" to operate or control the Church, that their attempt to merge Jericho D.C. into Jericho Maryland and to dissolve Jericho D.C. was legally invalid and of

no force and effect, and that the purported terminations were invalid. Appellees also sought injunctive relief "to remedy [appellants'] unlawful activities," including dissipating assets of the Church. In addition, they sought an accounting, a constructive trust, and damages for breach of fiduciary duty, unjust enrichment, fraudulent concealment, and constructive fraud, and relief from violations of the NPCA and the Maryland Corporations and Associations Code.

On December 3, 2013, the individual appellants filed a motion to dismiss all counts of the Complaint, asserting that Resolution 1-09 was legally valid and arguing that appellees had failed to comply with the statutory prerequisites for bringing a derivative suit. Jericho Maryland filed a separate motion to dismiss, arguing that the trial court lacked personal jurisdiction over it. On April 23, 2014, Judge Nash issued orders dismissing the counts of the Complaint that alleged fraudulent concealment and a violation of the Maryland Code, but otherwise denied appellants' motions. Judge Nash also denied a subsequent motion to dismiss filed by appellants on May 5, 2015.

In September 2014, appellants filed a motion for summary judgment, which Judge Nash granted in part and denied in part on February 26, 2015. He dismissed plaintiff Gray (who he found had "voluntarily left the church") from the suit for

lack of standing and granted judgment in favor of the appellants on several of the counts, but allowed the matter to proceed to trial on appellees' claims for declaratory and injunctive relief.

Judge Nash presided over a three-day bench trial from June 8-10, 2015. On July 7, 2015, Judge Nash issued his Findings of Fact and Conclusions of Law. He concluded that plaintiffs/appellees "met their burden of showing a violation of the [NPCA] that warrants application of [the court's] equitable power to issue declaratory and injunctive relief." He declared "that Resolution 1-09 of the Jericho DC Board of Trustees, which purported to change the membership of the Board of Trustees, is invalid"; "that the current Board of Trustees for Jericho DC shall consist of the surviving members of the Board of Trustees that existed prior to the invalidated Resolution 1-09, those members being: William A. Meadows; Dorothy L. Williams, and Joel R. Peebles"; and "that actions taken by defendants after March 15, 2009, acting as the purported Board of Trustees of Jericho DC, under the color of [R]esolution 1-09, including the purported approval of the merger of Jericho DC into Jericho MD, are invalid[.]" As injunctive relief, Judge Nash ordered that defendants/appellants "refrain from exercising ownership or control over any corporate assets of Jericho Maryland formerly belonging to, or derived from the corporate assets of Jericho DC" and that plaintiffs/appellees "are

reinstated as members of the church, pending a review of their membership status by the validly-constituted Board of Trustees of Jericho DC, as declared above."[1]

This appeal followed.

## II. Analysis of the Arguments on Appeal

### A.

---

[1] Judge Nash's rulings did not conflict with the ruling by the court in *Chavez v. Jericho Baptist Ministries, Inc.*, No. CAL 12-13537 (P.G. County Md., Jan. 28, 2014) ("*Chavez I*"), that the individual appellants in the instant case had lawfully incorporated a church in Maryland and lawfully elected themselves as trustees. Judge Nash's ruling makes clear that in granting appellees essentially the declaratory relief they requested (e.g., a declaration that "[t]here has never been a proper election of a new Board of Trustees, after notice to all parties," that "[d]efendants are unlawfully operating as Jericho Baptist Church Ministries, Inc. without lawful authority to do so," and that "[d]efendants are not the lawful Board of Trustees of the Church"), he interpreted appellees' claims as claims that no new Board of Jericho D.C. was elected pursuant to Resolution 1-09 and that Jericho Maryland did not lawfully absorb Jericho D.C. by merger. Judge Nash noted that courts in Maryland had "specifically left open the issues . . . as to the propriety of Resolution 1-09 . . . and the make-up of the Jericho D.C. Board of Trustees" (citing *Chavez v. Jericho Baptist Ministries, Inc.*, Sept. Term 2013, No. 2604 (Md. App. March 13, 2015) ("*Chavez II*") at 20 n.8 ("refrain[ing] from commenting on whether the merger . . . complied with all requirements imposed by the laws of the District of Columbia"), and *Jericho Baptist Church Ministries, Inc. v. McClam-Magruder*, Sept. Term, 2011, No. 2023 (Md. App., September 19, 2012), at 8; *see also Chavez II* at 16 n.7 ("refrain[ing] from commenting on the composition of the board of trustees for Jericho D.C. on October 30, 2010").

We begin our analysis with Jericho Maryland's argument that Judge Nash erred in not granting its motion to dismiss for lack of personal jurisdiction. Jericho Maryland emphasizes that it is a Maryland corporation that conducts its church services in Maryland and that the injury appellants allege — termination of their church membership — was a termination from Jericho Maryland, not from Jericho D.C., and occurred "more than a year after the District of Columbia corporation ceased operation[.]" Jericho Maryland asserts that Judge Nash was therefore mistaken in reasoning that "the majority of [the] events [alleged in the Complaint] occurred while the Church was operating as a District of Columbia corporation[.]"

Where (as here) the relevant facts are undisputed, this court reviews *de novo* whether the trial court had personal jurisdiction. *Spellman v. Boland*, No. 15-FM-429, 2016 WL 3654503, *2 (D.C. July 7, 2016). Under the District of Columbia's long-arm statute (as in effect at the times relevant to this dispute, as well as now), a court in the District of Columbia "may exercise personal jurisdiction over a person, who acts directly or by an agent, as to a claim for relief arising from the person's . . . transacting any business in the District[,]" D.C. Code § 13-423 (a)(1) (2001), if the claim raised has a "discernible relationship to the 'business' transacted in the District." *Shoppers Food Warehouse v. Moreno*, 746 A.2d 320, 329 (D.C. 2000) (internal quotation marks omitted). This court has "repeatedly reaffirmed that the

transacting business provision of the District's Long Arm Statute is coextensive with the due process clause of the Fifth Amendment." *Family Fed'n for World Peace & Unification Int'l v. Hyun Jin Moon*, 129 A.3d 234, 242 (D.C. 2015) (internal quotation marks and brackets omitted). "In other words, the defendant must have minimum contacts with the forum so that exercising personal jurisdiction over it would not offend traditional notions of fair play and substantial justice." *Daley v. Alpha Kappa Alpha Sorority, Inc*., 26 A.3d 723, 727 (D.C. 2011) (internal quotation marks omitted). "This means that the non-resident defendant's conduct and connection with the forum state [must be] such that he should reasonably anticipate being haled into court there." *Id*. (internal quotation marks omitted).

Judge Nash's actual reasoning was that appellees' allegations — that Jericho Maryland merged with Jericho D.C. in violation of District of Columbia law — related to "events that took place when the Church, which Jericho Maryland now controls, was incorporated in D.C." and thus "arose directly from" Jericho D.C.'s operation as a District of Columbia corporation.[2] Judge Nash then analogized to the successor liability doctrine to determine that Jericho Maryland had "transacted

---

[2] Contrary to appellants' claims, the judge's reasoning was neither confused nor mistaken.

business in the District of Columbia by way of its predecessor, Jericho D.C.[,]" and that Jericho Maryland had "sufficient minimum contacts with the District to satisfy due process." His reasoning is supported by relevant case law.

"Ordinarily, a business entity which acquires the assets of another business is not liable for its predecessor's liabilities and debts." *Bingham v. Goldberg. Marchesano. Kohlman, Inc.*, 637 A.2d 81, 89 (D.C. 1994). However, there "are several recognized exceptions to this general rule," including where (1) there is an implied or express agreement to assume liabilities, (2) the transaction amounts to a "de facto merger," (3) the successor corporation is a "mere continuation" of its predecessor, or (4) the transaction is fraudulently designed to escape liability for debts. *Id.*; *see also Sodexo Operations, LLC v. Not-For-Profit Hosp. Corp.*, 930 F. Supp. 2d 234, 236 (D.D.C. 2013). These exceptions embody the doctrine of successor liability. Judge Nash "acknowledge[d] that the [successor liability] doctrine . . . is not a precise fit" to this case because it involves a non-commercial entity, but saw "no reason [why its] logic . . . should not apply with equal force in this context[.]" He went on to find that because two of the four potential exceptions (the de facto merger and mere continuation exceptions) apply to Jericho Maryland, it was Jericho D.C.'s (putative) successor in interest and, therefore, was subject to the court's jurisdiction.

Appellants assert that Judge Nash "conceded" that the doctrine of successor liability "had never been accepted or even considered by this Court[.]" Whether or not Judge Nash made such a concession, the pertinent fact is that in *Bingham*, this court "conclude[d] that the undisputed facts fail[ed] to show a basis for application of any of the four exceptions to the rule against successor liability." 637 A.2d at 92. We thus implicitly reasoned that the doctrine of successor liability would apply on appropriate facts.[3] The question before this panel is whether Judge Nash erred in applying the doctrine of successor *liability* — which "is designed to prevent a situation whereby the specific purpose of acquiring assets is to place those assets out of reach of the predecessor's creditors," *Baltimore Luggage Co. v. Holtzman*, 562 A.2d 1286, 1293 (Md. Ct. Spec. App. 1989) — as an analogy to resolve the issue of whether the court had personal *jurisdiction* over Jericho

---

[3] *See also Nissen Corp. v. Miller*, 594 A.2d 564, 573 (Md. 1991) ("Like the majority of our sister states, we adhere to the general rule of nonliability of successor corporations, with its four traditional exceptions[.]"). Thus, our implicit embrace of the doctrine was consistent with the jurisprudence of the Court of Appeals of Maryland, whose decisions "are 'accorded the most respectful consideration by our courts.'" *English v. United States*, 25 A.3d 46, 54 n.11 (D.C. 2011). We also note that the United States District Court for the District of Columbia has interpreted *Bingham* as having adopted the successor liability doctrine. *See Sodexo*, 930 F. Supp. 2d at 237; *Material Supply Int'l, Inc. v. Sunmatch Indus. Co., Ltd.*, 62 F. Supp. 2d 13, 23 (D.D.C. 1999).

Maryland. (Appellants appear to be correct that this court "has never accepted a successor theory of personal jurisdiction.")

In *Patin v. Thoroughbred Power Boats Inc.*, 294 F.3d 640 (5th Cir. 2002), the United States Court of Appeals for the Fifth Circuit relied on the successor liability doctrine to hold that an entity was subject to jurisdiction in the same manner as its predecessor. The Fifth Circuit reasoned that "because the two corporations . . . are the *same entity*, the jurisdictional contacts of one *are* the jurisdictional contacts of the other for the purposes of the . . . due process analysis." *Id.* at 653 (italics in the original); *see also id.* at 653 n.18 (collecting cases following the same rule).[4] We adopt that reasoning. We also discern no

---

[4] *See also LiButti v. United States*, 178 F.3d 114, 123 (2d Cir. 1999) (noting that "various courts have held that when a person is found to be a successor in interest, the court gains personal jurisdiction over them simply as a consequence of their status as a successor in interest"); *Minnesota Mining & Mfg. Co. v. Eco Chem. Inc.*, 757 F.2d 1256, 1264-65 (Fed. Cir. 1985) (finding that the exercise of personal jurisdiction over a successor corporation with no ties to the forum state was appropriate when the successor corporation was a "mere continuation," or "alter ego," of the predecessor corporation and exercise of personal jurisdiction would have been appropriate over the predecessor); *Fehl v. S.W.C. Corp.*, 433 F. Supp. 939, 945-46 (D. Dela. 1977) (explaining that "[c]ertain principles of the substantive law with respect to the assumption by successor corporations of products liability are relevant to [a] jurisdictional question" because "[c]ommon to the scope of both jurisdiction and liability is . . . fairness[,]" and reasoning that "if a new corporation is formed to acquire the assets of an existing corporation, which then ceases to exist, the successor may be found to be a mere continuation of the predecessor").

error in Judge Nash's use of the successor liability doctrine as an analogy. "[T]he de-facto-merger exception generally requires that the two entities — the predecessor entity and the acquiring entity — be essentially the same." *Direct Supply, Inc. v. Specialty Hosps. of Am., LLC*, 878 F. Supp. 2d 13, 21 (D.D.C. 2012). Under the mere continuation exception, among "the factors which show that an entity is a 'mere continuation of a predecessor'" is "whether there is a 'common identity of officers, directors, and stockholders in the purchasing and selling corporations[.]'" *Sodexo*, 930 F. Supp. 2d at 238. In declining to dismiss the complaint against Jericho Maryland, Judge Nash observed that the Complaint "alleges that Jericho Maryland has largely continued to perform the same services as Jericho D.C.[,] . . . [a]nd although there was never a sale, Jericho Maryland now controls the assets of Jericho D.C."[5] He also relied on the allegation that "Jericho Maryland and Jericho D.C. have the same name, Jericho Baptist Ministries Inc.[,] . . . and at the time the two corporations merged, their [putative] directors, management, parishioners, mailing address, and business were identical." Jericho Maryland does not dispute Judge Nash's characterization of the Complaint, and we

---

[5] Indeed, the November 1, 2010, "Plan of Merger" explicitly stated that "all assets, debts, liabilities, obligations[,] and guarantees of Jericho Baptist Church Ministries, Inc., a District of Columbia domestic corporation, whether current or future, are hereby transferred to and merged with Jericho Baptist Church Ministries, Inc., a State of Maryland domestic corporation."

agree with Judge Nash's conclusion that, on the Complaint's allegations, Jericho Maryland was subject to the jurisdiction of the Superior Court.

**B.**

We next address appellants' argument that appellees attempted to assert entirely derivative claims and that dismissal of the Complaint was required because, having failed to satisfy the statutory prerequisites for bringing a derivative action, appellees lacked standing to sue. Appellants' argument is premised on D.C. Code § 29-411.03 (1) (2012 Repl.), which provides that a plaintiff "shall not commence a derivative proceeding until . . . [a] demand in the form of a record has been delivered to the nonprofit corporation to take suitable action." There is no dispute that plaintiffs/appellees made no such demand on the corporation before filing suit.

For purposes of District of Columbia law governing non-profit corporations, "the term 'derivative proceeding' means a civil action in the right of a domestic nonprofit corporation or, to the extent provided in § 29-411.08, in the right of a foreign nonprofit corporation." D.C. Code § 29-411.01 (2012 Repl.). "In a derivative action, the shareholder seeks to assert, on behalf of the corporation, a

claim belonging not to him but to the corporation." *Flocco v. State Farm Mut. Auto. Ins. Co.*, 752 A.2d 147, 151 (D.C. 2000).

"[C]ourts have wide discretion in interpreting whether a complaint states a derivative or primary action." *Johnson v. American Gen. Ins. Co.*, 296 F. Supp. 802, 808 (D.D.C. 1969) (citing *Borak v. J. I. Case Co.*, 317 F.2d 838, 845 (7th Cir. 1963)). Here, Judge Nash recognized that the Complaint "sp[oke] largely of injuries to the Church and its assets and property," but, citing *Johnson*, also observed that "courts have held that 'the same facts can give rise to several sets of claims, some of which are personal and some of which are derivative.'" In addition, Judge Nash recognized this court's cautionary words about "'too expansive a view of the requirement of derivative suits'" when allegations are made against a non-profit corporation and its leaders. *See Daley*, 26 A.3d at 729 (holding that the claims brought by plaintiff suspended sorority members, for "relief from improper discipline" by the non-profit sorority, was a direct rather than derivative claim; reasoning that "the individual rights of the plaintiffs were affected by the alleged failure to follow the dictates of the constitution and by-laws and they thus had a direct, personal interest in the cause of action, even if the corporation's rights are also implicated" (internal quotation marks omitted)).

In this case, plaintiffs/appellees sought relief from appellants' conduct in (allegedly) barring them (but not all others) from church property and facilities and from attending church services and from appellants' allegedly unauthorized use of appellees' tithes and offerings. Judge Nash did not abuse his discretion in concluding that because plaintiffs/appellees alleged an injury particularized to them and a "personal financial stake," they were entitled to proceed on the claims they brought on their own behalves, by which they sought relief from "a special injury . . . not suffered equally by all" who affiliated with the church.[6]

---

[6] Judge Nash relied on the so-called "special injury" exception to the requirement that suits alleging wrongs against a corporation be brought derivatively. The exception applies where plaintiffs "allege a 'special injury' to themselves, apart from that suffered by the corporation [such as losses resulting from a company wrongfully withholding dividends]," *Labovitz v. Washington Times Corp.*, 172 F.3d 897, 901 (D.C. Cir. 1999), and "where there is a wrong suffered by [a] plaintiff that was not suffered by all stockholders generally or where the wrong involves a contractual right of the stockholders, such as the right to vote." *Gonzalez v. Fairgale Props. Co., N.V.*, 241 F. Supp. 2d 512, 516 (D. Md. 2002) (internal quotation marks omitted); *see also Allen v. El Paso Pipeline GP Co., L.L.C.*, 90 A.3d 1097, 1106-07 (Del. Ch. 2014) (explaining that the Delaware Supreme Court has held that stockholders who allegedly have suffered direct injury may sue individually for breach of their contractual rights, "even when all stockholders held the same right and suffered the same injury" (citing, *inter alia*, *Tooley v. Donaldson, Lufkin, & Jenrette, Inc.*, 845 A.2d 1031, 1035 (Del. 2004) (so holding even though referring to the concept of "special injury" as "confusing")).

*Cf. Franklin v. Jackson*, No. DKC 14-0497, 2015 WL 1186599, *5-6 (D. Md. Mar. 13, 2015) (citing *Board of Trustees of Jericho Baptist Church Ministries, Inc. v. Joel R. Peebles, Sr., et al.*, Case No. CAL10-33647, Circuit Court for Prince George's County, Maryland ("*Trustees v. Peebles*"), in which Joel Peebles, to

(continued…)

## C.

Appellants further argue that Judge Nash erred in not dismissing the case as moot after he was advised, via appellants' second motion to dismiss, that Jericho Maryland had sent appellees (eve-of-trial) letters, signed by appellant Killen as Chair of the Board of Trustees, welcoming them back to the congregation (and thereby, appellants asserted, eliminating appellees' claimed injury). We reject this claim of error. As Judge Nash reasoned, plaintiffs'/appellees' loss of membership in the Maryland church was not their only claimed injury at issue; rather, they claimed injury from appellants' "taking control of the church [i.e., of the entity that was Jericho D.C.]." We agree with Judge Nash that plaintiffs/appellees presented a "collection of claims" and sought a "range of remedies" that the welcome-back letters did not address.[7] "The burden of demonstrating that a case is moot falls

---

(…continued)

whom the Jericho Maryland trustees sent a letter expelling him from the church, and William Meadows filed counterclaims against Jericho Maryland and its trustees, alleging that they unlawfully seized control of the church; observing that "[i]t does not appear that the . . . counterclaims are asserted derivatively on behalf of the Church").

[7] As appellees argue, Judge Nash could also have found a likelihood that the termination of appellees' membership (on the stated ground that they did "not accept the Trustees of the Church") would recur. A case generally may be deemed

(continued…)

heavily upon the party asserting [mootness]." *In re Morris*, 482 A.2d 369, 371 (D.C. 1984). We have no difficulty affirming Judge Nash's ruling that defendants/appellants did not meet that burden.

## D.

Appellants next argue that Judge Nash should have declined to act in this matter because it required him to exercise authority over religious matters in violation of the First Amendment. They assert that the dispute about the alleged wrongful termination of appellants' membership in the Church was "non-justiciable" because appellants were expelled for "purely ecclesiastic" or "purely religious reasons" (i.e., because they had "'caused contention, animosities and discord within the Church'"). Appellants also highlight the fact that, in his July 7, 2015, ruling, Judge Nash ordered that appellees be "reinstated as members of the church[.]" They argue that Judge Nash could not have correctly concluded that appellants were members of Jericho D.C. (or that Joel Peebles, Meadows and Williams were members eligible to serve on the Jericho D.C. Board) "without

---

(…continued)
moot only if "there is no reasonable expectation that the alleged violation will recur to the complaining party[.]" *Hardesty v. Draper*, 687 A.2d 1368, 1371 (D.C. 1997) (internal brackets and quotation marks omitted).

making a determination that each of [those individuals] had accepted Jesus Christ as Lord," which, of course, was a finding that was constitutionally impermissible — a finding Judge Nash could not make without entangling himself in church affairs in violation of the First Amendment.[8]

We disagree that the matters on which Judge Nash ruled were non-justiciable. It is true, of course, that the "'religion clauses' [of the First Amendment] severely circumscribe the role that civil courts may play in the resolution of disputes involving religious organizations[,]" *Meshel v. Ohev Sholom Talmud Torah*, 869 A.2d 343, 353 (D.C. 2005), and that mere "exclusion from a religious community[] is not a harm for which courts can grant a remedy." *Burgess v. Rock Creek Baptist Church*, 734 F. Supp. 30, 33 (D.D.C. 1990) (internal quotation marks omitted). "This does not mean, however, that churches are above the law or that there can never be a civil court review of a church action." *Heard v. Johnson*, 810 A.2d 871, 879 (D.C. 2002). If the resolution of an internal church dispute would not require the civil court to decide "matters of discipline, faith . . .

---

[8] Appellants also argue that Judge Nash impermissibly "probe[d] into a religious body's selection and retention of a clergyman." Notably, however, although the Complaint asserted that the "[p]urported Board's effort to 'terminate' Pastor Peebles . . . [was] legally invalid[,]" and although appellee Jamison acknowledged in her deposition that she wanted the court to "assign [Joel Peebles as] spiritual leader," Judge Nash's order did not purport to reinstate Joel Peebles (or to install anyone else) as Pastor.

or ecclesiastical rule, custom, or law[,]" the court may exercise jurisdiction without offending the First Amendment. *Bible Way Church of Our Lord Jesus Christ of the Apostolic Faith v. Beards*, 680 A.2d 419, 427 (D.C. 1996) (internal quotation marks omitted). "Courts may, for example, apply 'neutral principles of law' to resolve [church] disputes[.]" *Samuel v. Lakew*, 116 A.3d 1252, 1257 (D.C. 2015) (quoting *Jones v. Wolf*, 443 U.S. 595, 602 (1979)).

We are satisfied that Judge Nash did no more in this case than "appl[y] neutral principles of law to resolve a dispute about whether the . . . [claimed] Board had been duly elected in accordance with church bylaws." *Id.* at 1260. Resolution of this dispute required only that the court determine whether Resolution 1-09 was passed in accordance with the neutral principles set forth in the NPCA; the court's declaratory and injunctive orders flowed from that determination, because if the Jericho D.C. Board installed through the Resolution was not duly elected, the putative Jericho D.C. Board members' votes to merge Jericho D.C. into Jericho Maryland and to transfer Jericho D.C.'s assets to Jericho Maryland were invalid, and the actions of Jericho Maryland Board members in forcing appellees (as plaintiff/appellee George put it in his deposition) to leave "the

buildings that we built through our tithes and offerings" also were not valid.[9] Contrary to appellants' assertions, Judge Nash was not required to determine whether appellees, Joel Peebles, or anyone else had "accepted Jesus Christ." There was no dispute that appellees had been regarded as members of Jericho D.C. before the Jericho Maryland Board Chair expelled them from access to church services and facilities. Moreover, Judge Nash's order that appellees be re-instated did not require a determination of their faith or membership eligibility, for the order specifically stated that appellees were reinstated "pending a review of their membership status by the validly constituted [Board]." Judge Nash recognized that it was "manifestly not [his] place to determine or apply the standards by which a church determines whether certain individuals are acceptable members of the church."[10]

---

[9] *Cf. Bouldin v. Alexander*, 82 U.S. 131, 139-40 (1872) ("[W]e cannot decide who ought to be members of the church . . . . But we may inquire whether the resolution of expulsion was the act of . . . persons who were not the church and who consequently had no right to excommunicate others.").

[10] Judge Nash explained that "[i]f [appellants] were, in fact, the validly-constituted Board of Trustees of Jericho Baptist Church Ministries, then they would have had the discretion, entirely unfettered by the courts, to decide who could, or could not, be members of that church. The question at issue here is something entirely different: whether the decision regarding plaintiffs' membership status was, in fact, made by the proper decision-maker, that is, the validly-constituted Board of Trustees."

**E.**

Judge Nash declared, as part of his July 7, 2015, order, that the current Board of Jericho D.C. "shall consist of the surviving members of the [Board] that existed prior to the invalidated Resolution 1-09, those members being: William A. Meadows[,] Dorothy L. Williams, and Joel R. Peebles." Appellants assert that because Meadows and Joel Peebles were not parties to the suit, the trial court had no jurisdiction over them and had no authority to "declare whether or not [they] had the right to control Jericho DC and owed fiduciary duties to that corporation as its Trustees." Appellants assert that regarding his declarations as to Meadows and Joel Peebles, Judge Nash issued an invalid "advisory opinion." They also assert that the two men were indispensable parties and that in their absence, the action should have been dismissed.

We reject appellants' reasoning on this point as well. As this court has recognized, "litigation often produces decisions that have effects that extend beyond the parties before the court. That does not mean, however, that every case of potentially broad import requires the joinder under [Super. Ct. Civ.] Rule 19 of each person and entity that stands to gain or lose from the litigation." *District of Columbia v. American Univ.*, 2 A.3d 175, 184 (D.C. 2010).

In any event, the short answer to appellants' argument is that Judge Nash's ruling — i.e., that "the current Board of Trustees for Jericho DC shall consist of the surviving members of the Board of Trustees that existed prior to the invalidated Resolution 1-09, those members being" Meadows, Williams, and Joel Peebles — does not (to use the language of Super. Ct. Civ. R. 19) "as a practical matter impair or impede the . . . ability [of those individuals] to protect th[eir] interest" or "leave [them] . . . subject to . . . obligations" on them (beyond those they had when they agreed years ago to serve on the Jericho D.C. Board). Nothing in Judge Nash's order *requires* Meadows and Joel Peebles to continue serving as Board members; they are as free to resign as they ever were, and they will violate nothing in Judge Nash's ruling even if they should be derelict in their duties. Thus, we cannot say that "in equity and good conscience[,]" this action should not have proceeded in [their] absence." *EMC Mortg. Corp. v. Patton*, 64 A.3d 182, 188 (D.C. 2013) (quoting Super. Ct. Civ. R. 19).[11]

---

[11] Further, contrary to any suggestion that Joel Peebles and Meadows might oppose the relief appellees sought and obtained, both Joel Peebles and Meadows themselves filed counterclaims against Jericho Maryland and its board members, seeking essentially the same relief that plaintiffs/appellees sought in the instant case and "alleging that the trustee members were not in fact lawful members, and that they . . . unlawfully seized control of the Church." *Franklin v. Jackson*, No. DKC 14-0497, 2015 WL 1186599, *5 (D. Md. Mar. 13, 2015) (citing *Trustees v. Peebles*).

**F.**

It is undisputed that Jericho D.C. (whose bylaws did not address the removal of directors) was governed by the NPCA provisions stating that, in the absence of bylaws to the contrary, a director may be removed only "by the affirmative vote of a majority of the then members of the board" at "a meeting called expressly for that purpose[,]" D.C. Code §§ 29-301.19, 29-301.20 (2001), and upon "[w]ritten or printed notice [delivered . . . to each member entitled to vote at such meeting] stating the place, day, and hour of the meeting and, in case of a special meeting, the purpose or purposes for which the meeting is called[.]" D.C. Code § 29-301.15 (2001). In addition, appellants do not dispute that Resolution 1-09 was adopted without prior written notice to Joel Peebles and was signed by others when he was not present. They contend, however, that the evidence did not establish that Joel Peebles was duly elected to the Board before March 15, 2009. Thus, they argue, his lack of prior written notice about the March 15, 2009, agenda and the Resolution did not, as Judge Nash found, render the Resolution invalid under the NPCA.

In reviewing a non-jury trial, this court will defer to the trial court's factual findings and credibility determinations unless they are clearly erroneous or without evidence to support them. *See* D.C. Code § 17-305 (2012 Repl.); *Jenkins v. Strauss*, 931 A.2d 1026, 1032 (D.C. 2007). Under the clearly erroneous standard, the question "is not whether [this court] would have made the findings the trial court did, but whether on the entire evidence [this court is] left with the definite and firm conviction that a mistake has been committed." *Cahn v. Antioch Univ.*, 482 A.2d 120, 128 (D.C. 1984) (internal quotation marks and brackets omitted).

We can find no clear error in Judge Nash's finding that, "prior to March 15, 2009," Joel Peebles "was a member of the Board of Trustees of Jericho D.C." Although, as appellants assert, the record does not contain evidence of notice of the meeting at which Joel Peebles was elected to the Board or other direct evidence of his election, ample circumstantial evidence was presented that supports Judge Nash's finding.[12] As Judge Nash observed, despite "some inconsistencies" in the documentary record, the record includes numerous Jericho D.C. corporate filings, "spanning the years from 1998 to 2008," identifying Joel Peebles as a Trustee. Also, Judge Nash credited Meadows's testimony that Joel Peebles was elected to

---

[12] We "accord equal weight to circumstantial evidence and direct evidence." *Salvattera v. Ramirez*, 111 A.3d 1032, 1037 (D.C. 2015) (internal quotation marks omitted).

the Jericho D.C. Board in 1997. In addition, there was evidence that Joel Peebles "attended meetings of the Board, held himself out as a member of the Board, and otherwise participated in Board business in a manner consistent with having a position on the Board." By contrast, there was "no evidence that, at any point in time, any of the other members of the Board, each of whom pre-dated Peebles on the Board, raised any issue about Peebles' participation in the business of the Board, or any alleged irregularity regarding the procedures employed to place him on the Board." The only evidence appellants presented that Joel Peebles was not elected to the Board was Dorothy Williams's self-contradictory testimony, which Judge Nash explicitly did not credit (noting *inter alia* that Williams "profited financially, as a result of a significant pay raise, by the action of the Board that was installed by Resolution 1-09").

We defer to Judge Nash's credibility determinations and weighing of the evidence and will not disturb his finding regarding Joel Peebles' status. We therefore uphold his conclusion that Resolution 1-09, which purported to establish a reconstituted Jericho D.C. Board that included appellants, was invalid because Joel Peebles did not receive the requisite prior written notice to which he was

entitled as a Jericho D.C. trustee.[13] *See In re Southeast Neighborhood House*, 93 B.R. 303, 305 (Bankr. D.D.C. 1988) ("Improper notice to only one board member is sufficient to render the meeting invalid[.]").

## G.

During trial, appellees' counsel used deposition testimony by Dorothy Williams to impeach Williams's trial testimony that Joel Peebles "wasn't on the board of trustees" and "was never elected to the board . . . that I know of." Specifically, appellees' counsel directed Williams's attention to portions of her deposition in which she testified that she had no reason to doubt that Joel Peebles was a trustee on January 27, 2000; that as far as she knew, Joel Peebles was a trustee on April 26, 2007; that he was a member of the Board on September 26, 2000, and in 2002, and on October 31, 2007; and that to her recollection, Joel Peebles was never removed as a trustee. Appellants subsequently referred to her deposition testimony to rehabilitate her credibility (asking, e.g., "So if you testified

---

[13] Because we uphold Judge Nash's ruling that Resolution 1-09 was invalid because of the lack of notice to Joel Peebles, we need not address appellants' additional argument assigning error to Judge Nash's finding that Meadows did not knowingly resign from the Board when he placed his signature on Resolution 1-09.

at your deposition that [Joel Peebles] was on the board on this date . . .[,] that would have been regarding the information on this document, correct?").

During appellants' closing argument — immediately after appellants' counsel had referred to the inconsistencies between Williams's trial and deposition testimony — Judge Nash asked counsel to submit copies of the deposition testimony, specifically, "those passages . . . that you believe Ms. Williams was impeached on and also you came back with some further testimony . . . by which she clarified her earlier answers[.]" Appellants' counsel did not object, but responded, "[o]kay." Appellants' counsel also did not object when Judge Nash, just before adjournment, reminded the parties to submit the relevant portions of the deposition testimony (or, if both sides agreed, the entire deposition transcript).

Now, however, appellants claim that Judge Nash abused his discretion by basing his decision in part on the Williams deposition excerpts, which were not admitted into evidence during trial. Appellants argue that they were prejudiced in that they "were unable to tailor their motions and closing argument to include the additional evidence" and "were unable to rehabilitate the witness's testimony live before the trial court."

Ordinarily, we review a trial court's decision to admit evidence or to re-open the record for abuse of discretion. *See Jones v. United States*, 17 A.3d 628, 631 (D.C. 2011); *Bryant v. District of Columbia*, 102 A.3d 264, 270 (D.C. 2014). However, where — as here — a party fails to object to the court's action, our review is to determine whether there has been "a clear miscarriage of justice." *D.D. v. M.T.*, 550 A.2d 37, 48 (D.C. 1988) (internal quotation marks omitted); *see also Miller v. Avirom*, 384 F.2d 319, 323 (D.C. Cir. 1967). We discern no miscarriage of justice here. Not only did appellants raise no objection in open court to Judge Nash's request for submission of the deposition transcripts; we also see no evidence that they raised an objection in a post-argument memorandum of law (which Judge Nash gave them an opportunity to submit). Further, even after appellees submitted to the court "the portions of Dorothy Williams' deposition transcript that were incorporated into the record during trial," appellants submitted no opposition, explanation, or supplemental pages on this issue. Even now they have not identified what else they could have said to cast Williams's deposition testimony in a different light. Thus, appellants are not entitled to relief on this claim.

**H.**

Finally, having rejected appellants' claims of error, we address one further issue that we considered before deciding to affirm Judge Nash's order *in toto*:

It may be thought that Judge Nash framed the relief he ordered in terms that were too broad, in that he declared invalid all "actions taken by defendants after March 15, 2009, acting as the purported Board of Trustees of Jericho DC, under the color of [R]esolution 1-09[.]" For a number of reasons, we conclude that the effect of the order is not as broad as the foregoing language might suggest.

First, it is unclear from the record whether the "purported Board of Trustees of Jericho DC" actually took any actions prior to November 1, 2010, the day when its members incorporated Jericho Maryland and, almost contemporaneously, merged Jericho D.C. into Jericho Maryland. Judge Nash found that as late as September 2010, a year and a half after Resolution 1-09 was adopted, Joel Peebles "convened a meeting of what he believed to be the Board, to address issues of the church arising from his mother's imminent death[,]" and "[a]t that meeting, Dorothy Williams made no mention of Resolution 1-09, or the existence of the newly-constituted Board of Trustees of which she was purportedly a member" and instead "allowed Joel R. Peebles, William A. Meadows, and Anne Wesley to proceed with the meeting as if they were, in fact, members of the Board of

Trustees." In other words, it may be that any actions taken by the Jericho D.C. Board between March 15, 2009, and September or early October 2010 (such as, for example, the execution of contracts between the church and third parties) were actions by the rightful Board that existed prior to invalidated Resolution 1-09.

Second, to the extent that the purported Board did act with apparent authority to bind the church prior to November 1, 2010, the rightful Jericho Board could ratify, retrospectively, any such actions by the purported Board or elect to treat them as voidable rather than void *ab initio*. We therefore see no reason to forecast that affirmance of Judge Nash's order will occasion sizable disarray in the affairs of the Church.

Although appellants presumably took a number of actions after constituting themselves as the Jericho Maryland Board, the foregoing language in Judge Nash's order did not broadly declare the actions of the Jericho Maryland Board to be invalid; to quote the language again (and in full), the actions invalidated were those "actions taken by defendants after March 15, 2009, *acting as the purported Board of Trustees of Jericho DC*, under the color of [R]esolution 1-09, including the purported approval of the merger of Jericho DC into Jericho MD [.]" Thus, the foregoing language reached only actions taken when the Church was incorporated

in the District of Columbia, not actions that occurred in Maryland after a Jericho Baptist Ministries entity was incorporated there. By the additional language of his order directing that appellees were "reinstated as members of the church, pending a review of their membership status by the validly-constituted Board of Trustees of Jericho DC," Judge Nash did effectively invalidate the action by the Jericho Maryland Board that denied appellees access to the church premises and resources that "formerly belong[ed] to, or derived from" Jericho D.C. The order also enjoined appellants from "exercising ownership or control over" those Jericho D.C. corporate assets. But — and this is the third reason why the order is not as broad as it may appear — the order does not otherwise invalidate or restrict the actions of the Board of Trustees of the Maryland entity. Accordingly, we do not anticipate that Judge Nash's order will have the effect of preempting litigation that should be decided in the courts of Maryland.

For the foregoing reasons, the judgment of the trial court is

*Affirmed.*