*Notice: This opinion is subject to formal revision before publication in the Atlantic and Maryland Reporters. Users are requested to notify the Clerk of the Court of any formal errors so that corrections may be made before the bound volumes go to press.*

# DISTRICT OF COLUMBIA COURT OF APPEALS

No. 19-AA-44

CLASSIC CAB, PETITIONER,

V.

DISTRICT OF COLUMBIA DEPARTMENT OF FOR-HIRE VEHICLES, RESPONDENT.

On Petition for Review of an Order of the
District of Columbia Department of For-Hire Vehicles
(DFHV4-18)

(Argued December 1, 2020                     Decided February 4, 2021)

*Sean M. Riley* for petitioner.

*Jacqueline R. Bechara*, Assistant Attorney General, for respondent. *Karl A. Racine*, Attorney General for the District of Columbia, *Loren L. AliKhan*, Solicitor General, *Carl J. Schifferle*, Acting Deputy Solicitor General, and *Stacy L. Anderson*, Senior Assistant Attorney General, were on the brief for respondent.

Before GLICKMAN, BECKWITH, and DEAHL, *Associate Judges*.

GLICKMAN, *Associate Judge*: Petitioner Classic Cab appeals an order of respondent District of Columbia Department of For-Hire Vehicles ("DFHV") denying its application to renew its certificate to operate as a "taxicab company." Due to circumstances that occurred while this litigation was pending, we must dismiss the appeal because it is moot.

**I.**

In the District of Columbia, a "taxicab company" cannot lawfully operate without a Certificate of Operating Authority from the Department of For-Hire Vehicles, which must be renewed annually.[1] Classic Cab had a certificate to operate as a "taxicab company" in 2017. In December 2017, it applied to renew its certificate to operate in 2018.

When reviewing the application, DFHV found that Classic Cab had twenty-eight taxicabs in its fleet but directly owned only fourteen of them. The other fourteen were independently owned. Accordingly, in January 2018, DFHV issued a "notice" denying the application, citing Classic Cab's "fail[ure] to meet the vehicle ownership requirement of 20 vehicles for a taxicab company as required by D.C. Official Code § 50-301.03(23) . . . ." Section 50-301.03(23) (2014 Repl.) defines "taxicab company" as:

> any person, partnership, or corporation engaging in the business of owning and operating a fleet or fleets of taxicabs having a uniform logo or insignia. A company must have a minimum of 20 taxicabs having a uniform logo or insignia and having unified control by ownership or by the company.

---

[1] 31 DCMR §§ 501.1, 501.6 (2021).

Classic Cab appealed, arguing, among other things, that it did not need to directly own at least twenty taxicabs to satisfy the statute's minimum vehicle requirement. Instead, because § 50-301.03(23) requires "unified control" over at least twenty cabs, and because "unified control" may be either "by ownership or by the company," Classic Cab argued that it had "unified control . . . by the company" over the requisite number of cabs.

In October 2018, after a two-day hearing, DFHV's Office of Hearing Examiners ("OHE") disagreed. OHE interpreted "unified control" as requiring "actual ownership," and thus affirmed the denial notice. Classic Cab challenged OHE's decision and, in January 2019, DFHV's Interim Director David Do issued a final agency decision affirming the denial notice. Classic Cab asked DFHV to stay its final decision pending appeal, but DFHV denied the request.

Classic Cab then petitioned for review of DFHV's order by this court. In February 2019, Classic Cab asked us to stay DFHV's final decision pending the review, arguing that "DFHV['s] final order has resulted in lost profits that will cause Classic Cab to be permanently closed if a stay is not granted." In March 2019, we denied the request. The parties then submitted briefs on the merits.

## II.

The parties' main disagreement on the merits is a matter of statutory interpretation: whether a company that controls, but does not own, at least twenty cabs is a "taxicab company" as defined by § 50-301.03(23), which requires, inter alia, "engaging in the business of owning and operating a fleet" and having at least twenty cabs under "unified control by ownership or by the company."[2]

However, as a threshold matter, we must first consider DFHV's argument that Classic Cab's appeal is moot. In January 2018, when DFHV issued its denial notice, Classic Cab had twenty-eight taxicabs in its fleet. But in February 2019, Classic Cab submitted an affidavit from Mushtaq Gilani, the owner of Classic Cab, to support its motion asking this court to stay DFHV's decision. In the affidavit, Mr. Gilani represented that "[s]ince October 12, 2018, Classic Cab's fleet has been reduced to 7 taxicabs" and the business is "closed" due to DFHV's order prohibiting it from doing business. Based on that representation, DFHV argues that Classic Cab no longer qualifies as a "taxicab company" even under its own interpretation of §

---

[2] The statute defines a "taxicab fleet" to mean "a group of 20 or more taxicabs having a uniform logo or insignia and having unified control by ownership or by association." D.C. Code § 50-301.03(24).

50-301.03(23) and, as a result, lacks a legally cognizable interest in the outcome of this case.

It is "well-settled that, while an appeal is pending, an event that renders relief impossible or unnecessary also renders that appeal moot."[3]  A case is moot "when the issues presented are no longer 'live' or the parties lack 'a legally cognizable interest in the outcome.'"[4]  This includes when "the court is asked to decide only abstract or academic issues."[5]  "The burden of demonstrating that a case is moot falls heavily upon the party asserting [mootness]."[6]

The circumstances here raise a serious question of mootness.  According to Mr. Gilani's affidavit, DFHV's order prohibited Classic Cab from doing business and thus making enough money to keep its fleet afloat.  By February 2019, Classic Cab had laid off all its employees, was on the cusp of being evicted from its only

---

[3]  *Settlemire v. D.C. Office of Emp. Appeals*, 898 A.2d 902, 905 (D.C. 2006) (quoting *Vaughn v. United States*, 579 A.2d 170, 175 n.7 (D.C. 1990)).

[4]  *Id.* at 904–05 (quoting *McClain v. United States*, 601 A.2d 80, 81 (D.C. 1992)).

[5]  *Thorn v. Walker*, 912 A.2d 1192, 1195 (D.C. 2006).

[6]  *Jackson v. George*, 146 A.3d 405, 416 (D.C. 2016) (quoting *In re Morris*, 482 A.2d 369, 371 (D.C. 1984)).

office, and stood to lose its remaining few drivers if DFHV's order remained in effect. To prevent its own disintegration, Classic Cab asked this court to stay DFHV's order. Without a stay, it represented that it "will no longer exist," it would be "permanently closed," and its "appeal will be rendered moot." Thus, Classic Cab was the first to acknowledge, and in no uncertain terms, that its appeal would be moot if this court did not issue a stay; and the court did not do so.

Since that time, Classic Cab has provided no further information about its status or its ability to resume business operations. Classic Cab did not discuss its business situation or the mootness of its petition for review in its initial brief in this court. DFHV, on the other hand, took Classic Cab up on its earlier assertion and argued in its brief that the petition now must be dismissed as moot. DFHV argued that because Classic Cab had been reduced to having (at most) only seven remaining taxicabs, it could not qualify for a license to operate as a "taxicab company" no matter how we interpret the requirement of "uniform control" over twenty cabs. Consequently, DFHV argued, Classic Cab can obtain no relief from this court and no longer has a legally cognizable interest in the outcome of this case.

Under these circumstances—where Classic Cab itself had averred under oath that its petition for review *would* be moot if this court denied a stay, due to its

admitted loss of cabs and the closure of its business; and where this court nonetheless denied a stay and DFHV then sought dismissal on mootness grounds based on Classic Cab's own averments—DFHV shouldered its burden of making a prima facie evidentiary showing of mootness, and Classic Cab was on notice that it had to respond to DFHV's argument and rebut its own admissions of mootness to avoid dismissal of its petition. Any failure to respond would be tantamount to a concession and could be treated as such. In *Thorn v. Walker*, for example, the appellant "effectively conceded that her appeal [wa]s moot" by failing to respond in her reply brief to the appellees' mootness argument, despite her belated contention at oral argument that the case remained justiciable.[7]

That is exactly what occurred here. Despite being aware of a critical mootness issue, Classic Cab never filed a reply brief to address it. Instead, it waited until oral argument to claim, for the first time, that the case is justiciable. Even at that eleventh hour, Classic Cab reiterated that it was "closed" and "out of business," and it proffered no factual reason to believe its business could be revived. Its counsel argued only that the case was still live because (1) its cessation of operations was involuntary and attributable to the challenged enforcement actions of DFHV, and

---

[7] 912 A.2d at 1197 n.2.

(2) it intended to reopen if it prevailed in its challenge. This was insufficient. While Classic Cab relied on *Thorn* to support the former ground, *Thorn* is inapposite.[8] As to the latter point, while it is not necessarily implausible to suppose that Classic Cab could reassemble twenty cabs in a future fleet (replicating what it had done in the past), counsel's bare and unsubstantiated statement of Classic Cab's intent to resurrect its business contradicted its unretracted affidavit and prior pleading and was too perfunctory by itself to be evaluated and given credence.[9] In any event, as in *Thorn*, the contention, made for the first time at oral argument, came too late, because Classic Cab "effectively conceded" mootness by failing to respond to DFHV's mootness argument in a reply brief.

---

[8] In *Thorn*, the appellant sought review of a trial court order requiring her to perform an agreement to sell residential property to the appellees. 912 A.2d at 1193–94. We held that the appeal was moot because, without seeking a stay of the order pending appeal, the appellant voluntarily complied with it and sold the property to the appellees. *Id.* at 1196–97. Classic Cab contends its appeal is not moot because, in contrast to the appellant in *Thorn*, it did seek stay orders and its closure was involuntary. However, merely "seeking a stay" was not enough to forestall mootness; Classic Cab needed to obtain a stay to do that. And *Thorn* said nothing about whether, or to what extent, involuntary compliance with a government order can moot a case. *Cf. Munsell v. Dep't of Agric.*, 509 F.3d 572, 582–83 (D.C. Cir. 2007) (claim that regulated entity's business closed due to "retaliatory actions taken by [government] officials" held "insufficient to avoid mootness" of entity's challenge to USDA regulations).

[9] *Cf. Comford v. United States*, 947 A.2d 1181, 1188 (D.C. 2008) ("It is not enough merely to mention a possible argument in the most skeletal way, leaving the court to do counsel's work, create the ossature for the argument, and put flesh on its bones." (quoting *United States v. Zannino*, 895 F.2d 1, 17 (1st Cir. 1990))).

For the reasons stated, we dismiss the petition for review as moot without reaching the merits of petitioner's challenge.

*So ordered.*